UNITED STATES DISTRICT COURT
District of Minnesota

CR 17-87 PAM/SER

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1341 |
| | 18 U.S.C. § 1343 |
| v. | 18 U.S.C. § 1957 |
| | 18 U.S.C. § 981 |
| SHAWN ROBERT DOOLING, | 18 U.S.C. § 982 |
| | 21 U.S.C. § 853 |
| Defendant. | 28 U.S.C. § 2461 |

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

1. From in or before 2010 through in or about 2013, Shawn Robert Dooling executed a scheme to defraud customers of his wind energy company. During this period, Dooling represented to his customers that for a contract price, he and his wind energy company would build and maintain wind energy turbines on his customers' land that would generate enough electricity to supply his customers' needs and eventually sell additional electricity to utility companies. Rather than use his customers' money to purchase their promised turbines, Dooling unlawfully spent much of their money on personal expenses and diverted their money to pay for other customers' projects. In addition, Dooling made false and misleading representations to customers and others, including his own employees, in an effort to perpetuate the scheme and conceal the truth about what had happened to customers' money. As a result, more than 60 customers who paid a combined total of more than $13 million to Dooling and his company never received the wind turbines they had been promised or a refund of their money.


SCANNED
APR 11 2017
U.S. DISTRICT COURT MPLS

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

2. Shawn Robert Dooling (hereinafter "Dooling" or the "Defendant") was a resident of the State and District of Minnesota.

3. Renewable Energy SD, LLC (hereinafter "RESD") was a company incorporated under the laws of South Dakota, which had its headquarters in Excelsior, Minnesota. Dooling founded RESD in or about 2009 and was the owner and president of RESD.

4. Through RESD, Dooling marketed and sold wind turbines, wind turbine towers, and wind turbine installation and maintenance services to customers. The electricity-generating wind turbines were marketed by RESD as a way for customers to save money by reducing or even eliminating their energy expenses. Dooling and RESD also claimed that some customers would be able to sell excess electricity generated by the wind turbines to electric utility providers.

5. RESD's customers were predominantly farmers who owned and operated farms in the State and District of Minnesota and elsewhere.

6. Polaris America, LLC ("Polaris") was a wind turbine manufacturer located in New Jersey. RESD purchased some wind turbines for RESD customers from Polaris.

7. Xzeres Corporation ("Xzeres") was a wind turbine manufacturer located in Oregon. RESD purchased some wind turbines for RESD customers from Xzeres.

## THE SCHEME AND ARTIFICE TO DEFRAUD

8. The allegations stated in paragraphs 2 through 7 are re-alleged as if fully restated herein.

9. Beginning in or before 2010 and continuing through in or about 2013, in the State and District of Minnesota and elsewhere, Dooling knowingly devised and participated in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and material omissions.

10. Dooling, both directly and through RESD's employees and representatives, represented to RESD's customers that, in exchange for an agreed-upon contract price paid by the customer to RESD, RESD would obtain, install, and maintain a functional wind turbine and wind turbine tower on land designated by the customers.

11. It was part of the scheme to defraud that Dooling, both directly and indirectly through RESD's employees and representatives, falsely represented to customers that RESD would reserve a specific wind turbine or turbines for each customer by placing an order with a wind turbine manufacturer, including but not limited to Polaris and Xzeres. Dooling also falsely represented that RESD would send a portion of the money the customer paid to RESD to the wind turbine manufacturer as a down payment on the customer's wind turbine. Dooling further falsely represented that RESD would complete the purchase of the wind turbine from the manufacturer by sending an additional portion of the customer's funds to the manufacturer when the wind turbine was completed by the manufacturer and ready to be shipped to RESD or the customer.

12. Contrary to his representations, which were false and fraudulent when they were made, Dooling often did not use RESD's customers' money to reserve and purchase wind turbines from wind turbine manufacturers. Instead, as part of his scheme to defraud, Dooling took customers' money out of RESD bank accounts and used the customers' money for his own personal use and benefit. Additionally, as part of his scheme, Dooling diverted money paid by some customers to fund the wind turbine projects of other customers. Dooling's misuse of the customers' money left RESD unable to meet its obligations to all of its customers and unable to refund such customers' money, even though many of those customers never received the wind turbines that Dooling had promised them.

13. It was further part of the scheme to defraud that Dooling falsely represented to some customers that RESD had reserved a wind turbine for the customer and sent the manufacturer a down payment on the customer's behalf. In fact, Dooling then well knew that RESD had not sent any money to the manufacturer on behalf of said customers and had not reserved the customers' wind turbines.

14. Dooling also falsely told some customers that RESD's failure to deliver their wind turbines was due to delays that Polaris was experiencing in manufacturing their turbines. However, Dooling then well knew that RESD was unable to provide those wind turbines because Dooling had misused the customers' money by using it for his own personal use and benefit and applying it to other customers' projects.

15. As the result of Dooling's scheme and artifice to defraud, more than 60 of RESD's customers never received the wind turbines that Dooling and RESD promised to

4

deliver and install. Those customers paid Dooling and RESD more than $13 million in the expectation that Dooling and RESD would provide them a functional wind turbine as promised.

16.  As part of Dooling's scheme and artifice to defraud, Dooling transferred or withdrew approximately $2 million out of RESD's bank accounts for his personal use and benefit.

## COUNTS 1 - 3
(Mail Fraud)

17.  The allegations stated in paragraphs 1 through 16 are re-alleged as if fully restated herein.

18.  On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the Defendant,

**SHAWN ROBERT DOOLING**

for the purpose of executing and attempting to execute the scheme and artifice described above, knowingly caused to be sent, delivered, and received by the United States Postal Service or a private and commercial interstate carrier, items identified as follows:

| Count | Approximate Date of Mailing | Nature of Mailing |
|---|---|---|
| 1 | February 15, 2012 | Letter from the Defendant to the Minnesota Attorney General's Office regarding customer D.M., stating in part:<br><br>"The [customer's] funds are not being held by RESD. They have been passed along to the manufacturer for production of the turbine as they were supposed to do and we contend the purchase agreement is valid.<br><br>Sincerely,<br><br>[Signature]<br><br>Shawn R. Dooling<br>President[.]" |
| 2 | June 20, 2012 | Letter purporting to be from Polaris to RESD customers, postmarked in Excelsior, Minnesota. |
| 3 | August 17, 2012 | Letter from the Defendant to RESD customers R.S. and P.S. stating in part:<br><br>"I am happy to hear of your interest in an Xzeres wind turbine...The turbine is readily available to us allowing me to guarantee a commission date prior to December 31, 2012 if you provide RESD with a contract and down payment prior to August 24, 2012.<br><br>Sincerely,<br><br>[Signature]<br><br>Shawn R. Dooling<br>President<br>Renewable Energy SD[.]" |

19.   All in violation of Title 18, United States Code, Section 1341.

## COUNT 4
(Wire Fraud)

20. The allegations stated in paragraphs 1 through 16 are re-alleged as if fully restated herein.

21. On or about the date set forth below, in the State and District of Minnesota and elsewhere, the Defendant,

**SHAWN ROBERT DOOLING,**

for the purpose of executing the scheme described above and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below,

| Count | Approximate Date of Wire | Nature of Wire |
|---|---|---|
| 4 | August 8, 2012 | E-mail message sent from the Defendant using the email address sdooling@renewableenergysd.com to RESD customer A.S. regarding status of A.S.'s wind turbine project and related payments. |

22. All in violation of Title 18, United States Code, Section 1343.

## COUNT 5

23. The allegations stated in paragraphs 1 through 22 are re-alleged as if fully restated herein.

24. On or about January 7, 2013, in the State and District of Minnesota and elsewhere, the defendant,

**SHAWN ROBERT DOOLING,**

knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property

7

of a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of funds, such property having been derived from a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343.

25. Specifically, on or about January 7, 2013, the Defendant transferred $11,358 to New York University, drawn from a bank account in the name of "Shawn R. Dooling and Tina Bahn-Dooling" held at Bridgewater Bank, with the account number XXXX6678, knowing that more than $10,000 of the funds were derived from the proceeds of specified unlawful activity.

26. All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

27. Counts 1 through 5 and paragraphs 1 through 26 of this Indictment are hereby re-alleged and incorporated as if fully set forth herein by reference for the purpose of alleging forfeitures.

28. If the Defendant is convicted of any of Counts 1 through 4 of this Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violation of Counts 1 through 4 of this Indictment.

29. If the Defendant is convicted of Count 5 of this Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, any

and all property, real or personal, involved in such offense, and any and all property traceable to such property.

30. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

| _____ | _____ |
|---|---|
| ACTING UNITED STATES ATTORNEY | FOREPERSON |